PeaRsoN, C. J.,
dissentiente. The large fund not specifically bequeathed, consisting of perishable property, crops, &c., debts due testator and certain slaves, turns out not to be sufficient to pay the debts and general pecuniary legacies.
The question is, what is to be done in this unexpected state of things?
It is clear the specific legacies must abate in order to pay the debts; but must a further abatement be made to pay the general pecuniary legacies in full? orto con tribute pro rata, so as'to divide the loss? Or are the pecuniary legacies to fail because of this want of funds ?
The general rule is admitted to be, that specific legacies do not abate in favor of general pecuniary legacies, unless there is something in the will to show an intention on the part of the testator to give a preference to the latter. The rule is founded on this reason : a specific legacy is a perfected gift, Blade by the testator himself, who points out the identical *104 subject of the gift, whereas, a general pecuniary legacy is only a direction to the executor to pay a certain amount pi’ovi-ded he has funds in his hands.
I do not find any ground in this case for making an exception to the general rule. 1. It is a correct principle ; that if' one makes specific bequests of all of his estate, and also makes a general pecuniary legacy, it will be implied that it was his intention to subject the specific legacies to the payment of the pecuniary legacy, “ for otherwise, he would mock the legatee Sayer v. Sayer, Pre. Chan. 393. “ Suppose one possessing a personal estate at B and C only, bequeath it specifically to D and E, and then gives a legacy to F generally, the personal estate at B and O wdll be liable to the payment of this legacy, as there never was any other fund out of which the legacy to B, could have been satisfied1 Roper 418; Toller on Executors 226.
The difficulty seems to be in making the application of the principle, which no doubt arises from the fact that it alwaj's appears to be a “ hard case ” that a legatee should lose the bounty which he expected, and which was intended for him. There is no doubt that every testator intends and expects that all the legatees will get what he gives them, and when an unexpected state of things arises, so that some must be disappointed, it is considered hard that one, to w’hom a small money legacy is given, say $500, should lose it all, and one to whom a specific legacy of the value of many thousands is given, should get all of it, which is ordinarily the case. But reverse the position, shall one, to whom a small specific legacy is given, say a watch or riding horse, be obliged to give it up for the benefit of one to wrhom a legacy of $10,000 is given, and then the supposed hardship is put on the other side. This is the mode to test the principle and avoid the danger of a misapplication.
No one can read the case of White v. Beaty, as at first decided, 1 Dev. Eq. 87, without being satisfied that the Court were led into a misapplication of the principle, because of the supposed hardship. Indeed, when the case was again *105 brought before the Court, eighteen months afterwards. 1 Dev. Eq. 320, the former decree is reversed, and Judge HeNdbesoh, ter showing that the principle only applies where the testator gives away the whole of his estate in specific legacies, and then gives a pecuniary legacy, and that it does not apply when there is a/ny portion of the estate not given away in specific legacies, although such portion may be lost or wasted by the-.executor, or consumed in the payment of debts, concludes by saying the case of Sayer v. Sayer, does not support the former decision. “The truth is, when the case was before us heretofore, the facts were strangely misconceived.”
In White v. Green, 1 Ired. Eq. 45, the same principle came up for application; the principle isNcorrectly defined; Sayer v. Sayer and White v. Beaty, are cited, and the Court say “it is nearly to be inferred from the will itself, that it disposes, or professes to dispose of, all the property the testator had'; but the answers remove all doubt; they state that the testator left nothing, and had nothing applicable to the payment of this legacy, but such as he had given specifically.” Whether that is not another instance where the Court, after correctly stating the principle, depart from it in making the applicar tion, by introducing the words “left nothing, and had nothing applicable to the payment of this legacy,” may be questioned ; for taking the principle, as defined in that case, and in White v. Beaty and Bayer v. Bayer, it is obviously necessary, in order to make it applicable, that the testator should give away the whole of his estate in specific legacies, for otherwise, the natural inference is, that he was mistaken as to the amount of his debts, which is, by no means, an unusual thing, and there is no necessity for presuming that he intended to charge the specific legacies with the payment of the pecuniary legacies, in order to avoid the inference “that he intended to mock the legatee.” So, in my opinion, the principle does not apply to our case.
2. The words “to be paid by my executors out of my estate,” added to'the legacy of $500, cannot, in my opinion, be allowed the effect of making this case an exception ; because they *106 are not sufficiently expressive of an intention to charge the legacy of $500 on the specific legacies. Instead of giving to them the effect of making a charge, I think they are rather to be treated as expletive, or words of surplusage. A testator gives his negro man, “Jacob to A, to be delivered to him by my executorthese words are expletive, and amount to no more .than would be implied; and he gives $500 to B, “to be paid by my executor out of my estate;” these words are expletive, for, as a matter of coarse, if paid at all, it will be paid ont of the estate. Should it, contrary to all expectation, turn out that the balance of the estate is all exhausted in the payment of debts, so as only to leave “Jacob” on hand, it seems to me a strange result that the negro given to A, must be sold in order to pay B, the $500! At the most, it would seem that B could only expect A to divide the loss with him, and yet, if the words amount to a charge, B must be paid the whole $500, although A will thereby, get nothing at all. To justify such a result, surely the intention to create a charge, ought to bo clearly expressed.
Bray v. Lamb, 2 Dev. Eq. 372, is relied on to support the position that these words create a charge. The words there, were, “I give Nancy Bray five hundred dollars, to be raised and paid out of' my estate.” The case was attended with some peculiar circumstances, which are referred to in support of the conclusion, but the main stress was put on the word “ raised” out of my estate, which word was supposed to be peculiarly appropriate to create a charge; and, it is remarkable that the words “ to be paid ” out of my estate are treated as amounting to nothing, and are not alluded to in the opinion ; so, that which the builders then rejected, as useless, is now to be made tho corner stone!
In the earlier cases cited by Powell on Devises, when land was not liable for the payment of simple contract creditors, the courts seized on almost any words to create a charge in favor of such creditors. “I direct my debts to be paid” out of my estate; or, “I wish all of my just debts to be paid,” were held sufficient to create a charge on land in favor of *107 creditors; but, since the law has been changed, such words are treated as mere surplusage, and no meaning is attached to them, and as far as my researches have gone, such an effect never was given to words of this kind in order to create a charge in favor of general pecuniary legatees, at the expense of specific legatees, and in our case, in respect to the other pecuniary legacies to the widow, as she is a specific legatee of a large amount of property, she, as such, will be obliged to contribute to pay her own pecuniary legacies!! Can it be supposed in. the absence of plain -words that such was the intention of the testator ?
Pee Cueiam, Decree according to the opinion of the Court.